UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MUHAMAD M. HALAOUI,

      Plaintiff,

v.                                    Case No.  6:13-cv-1839-Orl-40TBS

RENAISSANCE HOTEL OPERATING
COMPANY d/b/a RENAISSANCE ORLANDO
AT SEA WORLD,

      Defendant.

_____/

<u>ORDER</u>

      On August 18, 2014, the Court heard oral argument on Defendant's Renewed Motion for Extension of Time to Provide Expert Report (Doc. 31).  Now, after considering the parties' arguments and the applicable law, the Court finds as follows.

      Plaintiff Muhamad M. Haloui was employed by Defendant Renaissance Hotel Operating Company d/b/a Renaissance Orlando at Sea World for approximately six years.  He alleges that during his employment, he endured an unwelcome, offensive, gender-based, sexually charged, and hostile work environment created by a female supervisor.  He claims that when he did not succumb to the supervisor's attempts to coerce him into sexual intercourse, she retaliated by reducing his work hours, giving him less desirable shifts, and reprimanding him.  Plaintiff complains that he reported this harassment and in October, 2011, Defendant retaliated by discharging him.

      Plaintiff went to a lawyer who sent him to see Dr. Jeffrey A. Danziger, a Diplomate, American Board of Psychiatry and Neurology Forensic, Geriatric and

Addiction Psychiatry for an evaluation.  In his November 27, 2011 report, Dr. Danziger opined that Plaintiff was experiencing symptomatology directly and causally related to his perception of mistreatment and his experiences while employed by Defendant.  Dr. Danziger also said Plaintiff would benefit from psychiatric and/or psychological treatment.

In 2012, Plaintiff brought a Equal Employment Opportunity Commission claim against Defendant.  To assist the EEOC in evaluating the claim, counsel for Plaintiff submitted a copy of Dr. Danziger's November 27, 2011 report.  The transmittal letter stated that Dr. Danziger was a consulting expert, that the report was attorney work product, and that counsel did not intend to waive the privilege by giving a copy to the EEOC.

The EEOC issued a Dismissal and Notice of Right to Sue whereupon Plaintiff filed this lawsuit in state court.  His complaint alleges that he has suffered both direct and consequential damages, including emotional suffering, mental pain, anguish, and loss of dignity.  Defendant removed the case to this Court based upon the existence of diversity jurisdiction.

In 2013, Defendant formally requested that Plaintiff produce all reports and documents prepared by any expert witnesses Plaintiff intended to call to testify. Plaintiff objected to the request on the ground that it was early in the case and he had not determined if he intended to call any experts to testify at trial.  Plaintiff never updated his response to the request.

On January 28, 2014, the parties filed their Joint Case Management Report in which they proposed that Plaintiff make his expert witness disclosures by July 3, 2014, and Defendant make its expert witness disclosures by August 1, 2014.  The Court adopted the parties' schedule and incorporated it into the Case Management and Scheduling Order ("CMSO").  (Doc. 22).

In February 2014, Plaintiff made his mandatory initial disclosures pursuant to FED.R.CIV.P. 26(a)(1).  He did not disclose Dr. Danziger or any other expert witnesses but did say he was claiming at least $500,000 in damages for emotional suffering, mental pain and anguish.

Defendant took Plaintiff's deposition on April 7, 2014.  During the deposition, Defendant's lawyer produced a copy of Dr. Danziger's November 27, 2011 report and questioned Plaintiff about his interaction with Dr. Danziger.  Plaintiff speculates that Defendant obtained a copy of the report from the EEOC under the Freedom of Information Act.  During the deposition, Plaintiff's lawyer said:

> So the record is clear, Dr. Danziger has been retained by plaintiff's counsel as a consulting expert; he has yet to be revealed in covered damages with case management orders, but for the purposes of full investigation of the claim, we're not waiving attorney/client privilege, but we'll allow the inquiry so we don't have to deal with it at a later date.

(Page 211, line 9).

On July 3, 2014, Plaintiff disclosed Dr. Danziger as his designated medical expert and furnished to Defendant a copy of the doctor's November 27, 2011 report

along with new pages created as the result of two additional meetings Plaintiff had with Dr. Danziger.

At the hearing on Defendant's motion, its lawyer informed the Court that plaintiffs rarely use expert witnesses in these types of cases, and Defendant made a conscious decision not to hire any experts unless and until Plaintiff disclosed that he intended to use an expert.  When Plaintiff made his expert witness disclosure Defendant says it "immediately commenced an analysis to determine whether it would need to retain a rebuttal expert to provide testimony which would require disclosure of an expert report."  (Doc. 31, ¶ 3).  The Court does not know what this analysis consisted of or how long it took.

Once Defendant decided to hire an expert, its lawyers interviewed six or seven doctors.  Given the doctors' limited availability and the Fourth of July holiday, this took several weeks.  Defendant's last scheduled interview was on July 30 and it retained a doctor on July 31, 2014, i.e., the day before its expert disclosure was due.  Defendant disclosed the name of its expert on August 1, 2014, but at that point, the expert had not formed any opinions.

On August 1, 2014, Defendant motioned the Court for an extension of time to provide its expert report.  (Doc. 29).  As grounds, it said that "due to the volume of documents being analyzed and the need for Defendant's expert to conduct an independent medical evaluation of the Plaintiff, Defendant needs additional time to disclose its expert report."  (Id., ¶ 3).  At the hearing, the Court learned that this representation was not entirely true.  The documents Defendant was referring to are

-4-

Dr. Danziger's notes, tests he administered to Plaintiff, and any other documents Dr.

Danziger reviewed.  (Recording of hearing at 10:40 to 10:41).  In truth, Defendant was

not analyzing these documents, and does not know if they are voluminous, because

Defendant only recently requested them by letter, and they have not yet been

produced.  (Id.).  Defendant also neglected to mention that it had only retained its

expert the day before the motion was filed.  Defendant requested an enlargement of

time to September 2, 2014.  (Id., ¶ 4).  The Court denied the motion because it did not

comply with M.D. FLA. R. 3.01(g).  (Doc. 30).

Defendant's expert is not able to render any opinions in this case until he

analyzes all relevant documents and examines Plaintiff.  Defendant says this will

require an enlargement of time to September 2, 2014.  But, if Defendant's motion is

granted, this may not be sufficient.  At the hearing, Plaintiff advised that he has limited

availability to be evaluated since he has taken a new job in another state.  If

Defendant's motion is denied, it argues that it will be prejudiced because it likely will

not be permitted to present expert medical opinion testimony at the trial.  Conversely,

its says Plaintiff will not be prejudiced because the discovery deadline is October 3,

2013, and the deadline for Daubert and dispositive motions is November 7, 2014.

(Id.).

By rule, the Court was required to enter the CMSO in this case.  F ED.R.CIV.P.

16(b).  The CMSO controls the course of the case unless it is modified "for good

cause and with the judge's consent."  F ED.R.CIV.P. 16(b)(4).  "This good cause

standard precludes modification unless the schedule cannot 'be met despite the

diligence of the party seeking the extension.'" Sosa v. Airprint Systems, Inc., 133 F.3d

1417, 1418 (11th Cir. 1998) (quoting FED.R.CIV.P. 16 advisory committee's note).

Thus, "due diligence" is the standard the Court applies in deciding Defendant's

motion.  Shehada v. City of Miami Beach, Fla., Case No. 11-22051-CIV, 2012 WL

3801726 at * 2 (S.D. Fla. Aug. 30, 2012) ("If the court finds that the party lacked due

diligence, then the inquiry into good cause is ended."); Lord v. Fairway Electric Corp.,

223 F.Supp.2d 1270, 1278 (M.D. Fla. 2002) ("Absent a showing of diligence on the

part of a party seeking to extend deadlines contained in the scheduling order, the

court-ordered schedule should not be disturbed."); Moyer v. Walt Disney World Co.,

146 F.Supp.2d 1249, 1252 (M.D. Fla. 2000) (Prejudice is immaterial in determining

whether there is good cause under Rule 16).

     When Defendant first read the complaint, it knew Plaintiff was claiming

damages for mental suffering, pain and anguish.  After removing the case to this

Court, Defendant agreed that its expert witness disclosure would be due on the

thirtieth day after the deadline for Plaintiff to make his expert witness disclosure.

Defendant knew, or should have known, when it made this agreement that doctors

have busy schedules and that time is required to schedule meetings and meet with

them.  It also knew or should have known that its expert would need time to review

Plaintiff's medical records, examine him, and issue a report.  Once Defendant

received the doctor's report, it would have to decide whether to use the doctor as a

testifying expert.  Knowing this, Defendant made the tactical decision that it would not

hire any experts unless informed by Plaintiff that he intended to call an expert witness.

When Defendant received Plaintiff's initial Rule 26 disclosures it knew Plaintiff was claiming at least $500,000 in mental and emotional damages and that they were the single largest component of Plaintiff's damages.  Defendant had the good sense to engage in paper discovery in an attempt to learn about Plaintiff's experts, if any, and independent of that discovery, it obtained a copy of Dr. Danziger's November 27, 2011 report which discusses symptomatology and causation.  With this added knowledge, Defendant stuck to its decision not to hire an expert unless Plaintiff disclosed that he intended to use an expert.  On this record, the Court finds that in addition to not being truthful in its original motion, Defendant was not diligent.  It made a calculated decision, knowing it might have at most 30 days to obtain an expert and comply with the disclosure requirements in the CMSO and Rule 26.  Defendant gambled, came up short, and ordinarily, the Court would see no reason to relieve it from its bad decision.

But, an additional fact came out at the hearing which the Court must consider. During argument, counsel for Plaintiff said:

> We did respond with privilege logs saying he was consulting and the purpose in doing that was simply to avoid us having to disclose all the information, have our expert be disclosed prior to the agreed upon date that the parties had.  We agreed upon the date, we had planned our discovery process out to afford our opportunities overall in doing that I mean we could be in the case management report that we put forward is the report that the Court adopted overall with those dates and our position again is just simply the case management order came out, it came out on February 10, 2014 and identified our disclosure, the official disclosure had to come out on July 1st of 2014 and that's the day we disclosed, that day.

(Recording of Hearing at 10:48.).

Minutes later, the following exchange took place:

> Court: I think what I heard you say and I want to make sure I'm clear on this, I thought what I heard you saying was, you knew you were going to use Dr. Danziger but you didn't want to disclose him until the deadline under the case management order.
>
> Counsel: That's correct your honor ...
>
> Court: Okay
>
> Counsel: we did not and and we held off on disclosing him until that point, at the point at which he was deposed or Mr. Haloui was deposed, he had testified that he had met with Dr. Danziger twice, the initial consultation, just immediately prior to the deposition, and then he met with him again so we had the most recent and updated report which is in front of the Court now just before the disclosure, and at that point we disclosed him which is from our practice common, he met three times, we kept the analysis fresh, up to date so that the Court as well as the jury will have the most up to date information to be provided, same as if we were to amend the disclosure or the Defendant was to amend the disclosure later on.

(Recording of Hearing at 10:53.).

The Court does not know when Plaintiff knew he was going to call Dr. Danziger as an expert witness. But, counsel's admission is cause for concern about the veracity of Plaintiff's initial Rule 26 disclosures, his objection to Defendant's request for production, and the representation at Plaintiff's deposition that Dr. Danziger was solely a consulting expert. What the Court does know is that at some point in the case, Plaintiff intentionally withheld his intent to call Dr. Danziger as an expert witness, and that Plaintiff utilized a privilege log to conceal this information.

The discovery rules are intended to create an integrated procedure for discovery in civil cases. Hickman v. Taylor, 329 U.S. 495, 505, 67 S.Ct. 385, 91 L.Ed.

451 (1947).  They are designed to prevent surprise and allow both sides to adequately prepare their cases.  <u>Reese v. Herbert</u>, 527 F.3d 1253, 1266 (11th Cir. 2008).  The CMSO does not change the discovery rules.  While it establishes the deadlines for the parties to make their expert witness disclosures, it does not provide a reason for not making the earlier disclosure of an expert witnesses a party knows it will call at trial.

Rule 26(e)(1)(A) requires parties to supplement and correct their responses to interrogatories, requests for production, requests for admissions, and disclosures under Rule 26(a).  Plaintiff violated the rule by failing to reveal until July 1, 2014 that he intended to use Dr. Danziger as an expert witness.  It was reasonable for Defendant to assume Plaintiff would comply with Rule 26(e)(1)(A), and if Plaintiff had complied, then Defendant might not need the extension it is now seeking.

The Court is presented with a situation in which neither party is without fault.  It will deal with the situation by sanctioning both parties.  The consequence of Plaintiff's failure to comply with the discovery rules is that Defendant's Renewed Motion for Extension of Time to Provide Expert Report (Doc. 31) is GRANTED.   Counsel shall coordinate the delivery of Plaintiff's discoverable health information to Defendant, and the evaluation of Plaintiff by Defendant's expert, who shall promptly issue his report of his final opinions.  If an extension of the discovery deadline is required to complete this work the parties should request it by separate motion.  As a sanction for Defendant's not altogether truthful motion and its lack of due diligence, it shall pay its own expert's fee and Plaintiff's attorney's fee in connection with the taking of the deposition of Defendant's expert witness by Plaintiff.

DONE AND ORDERED in Orlando, Florida, on August 22, 2014.

THOMAS B. SMITH
United States Magistrate Judge

Copies to all Counsel