**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MUHAMAD M. HALAOUI,

    Plaintiff,

v.                                    Case No:  6:13-cv-1839-Orl-40TBS

RENAISSANCE HOTEL OPERATING
COMPANY,

    Defendant.

## ORDER

This cause comes before the Court without oral argument on Plaintiff's Motion to Exclude Portions of Expert Report and Testimony of Defendant's Expert Richard A. Greer (Doc. 54), filed November 6, 2014.  Defendant responded in opposition on November 20, 2014.  Upon consideration, the Court grants in part, denies in part, and defers in part Plaintiff's motion.

**I.  BACKGROUND**

This case involves Plaintiff's, Muhamad Halaoui ("Halaoui"), allegations that he was sexually harassed while working for Defendant, Renaissance Hotel Operating Company ("Renaissance").  As a result, Halaoui contends that he has suffered damages, part of which consist of psychological and emotional harm.  To that end, both parties have submitted reports of expert witnesses who intend to opine on the psychological and emotional effects of the events in dispute.  Halaoui now moves to exclude portions of the report submitted by Renaissance's expert, Dr. Richard A. Greer ("Dr. Greer"), and seeks to limit Dr. Greer's testimony at trial.

1

**II.     STANDARD OF REVIEW**

The Federal Rules of Evidence allow a witness who is qualified as an expert because of his "knowledge, skill, expertise, training, or education" to offer opinion testimony where certain requirements are satisfied.  Fed. R. Evid. 702.  Under Rule 702 and the U.S. Supreme Court's ruling in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), district courts act as "gatekeepers" to "ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005), *cert. denied* 546 U.S. 935 (2005) (internal quotation marks omitted).  To do this, district courts must engage in a rigorous three-part inquiry, which requires the court to ask whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable . . . ; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."  *Id.* at 1291–92 (internal quotation marks omitted).

In forming the basis of his opinion, an expert may rely on "facts or data in the case that the expert has been made aware of or personally observed."  Fed. R. Evid. 703.  To that end, the facts or data on which an expert forms his opinion need not be admissible for his opinion to be admitted as long as these facts and data are of the type that experts in his field normally rely upon in forming an opinion on the subject at hand.  *Id.*  However, an expert witness may not disclose otherwise inadmissible facts or data to the jury unless the probative value of the information substantially outweighs any prejudicial effect.  *Id.*

Finally, an expert's opinion is not inadmissible simply because the expert opines on an ultimate issue in the case. Fed. R. Evid. 704(a).

In determining the admissibility of expert evidence, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Rosenfield v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (internal quotation marks omitted). Indeed, cross-examination, contrary evidence, and instruction on the burden of proof are the proper tools for challenging questionable expert evidence. *Id.* It is ultimately the burden of the party who offers the expert to show that his opinion is admissible, and the party must do so by a preponderance of the evidence. *Rink*, 400 F.3d at 1292.

### III.   DISCUSSION

Dr. Greer is a board-certified forensic psychiatrist. Dr. Greer received his medical degree from the University of Florida College of Medicine in 1985, completed his psychiatric residency at UCLA Medical Center in 1988, and completed a fellowship in forensic psychiatry at the University of Florida in 1992. (Doc. 57-3). Throughout his career, Dr. Greer has held numerous directorships, associate professorships, and chair positions related to psychiatry and forensic psychiatry and has published or co-published myriad articles in peer reviewed journals. (*Id.*).

Dr. Greer was retained by Renaissance to conduct a compulsory medical examination of Halaoui. Dr. Greer conducted the examination on September 30, 2014 and thereafter submitted a report of his findings and opinions. (Doc. 54-1). In his report, Dr. Greer describes the psychological examination he performed on Halaoui, relates Halaoui's medical and social history, and describes the events leading up to the instant

3

lawsuit as relayed by Halaoui. Regarding Dr. Greer's psychological examination of Halaoui, Dr. Greer conducted a general mental status examination and had Halaoui complete the Minnesota Multiphasic Personality Inventory-Second Edition ("MMPI-2"). (*Id.* at p. 5).

Dr. Greer ultimately diagnosed Halaoui with "Depressive Disorder Not Otherwise Specified," and concluded that Halaoui's depression is not the result of any sexual harassment he experienced while working for Renaissance. (*Id.* at pp. 6–7). Rather, Dr. Greer opines that Halaoui's psychological state derives from his own guilt about the life choices he has made and the disappointment he has caused to his parents. (*Id.*). Dr. Greer also stated in his report that Halaoui's MMPI-2 reveals that Halaoui tends to exaggerate his depressive symptoms and projects his own impulses onto others as a defensive mechanism. (*Id.* at pp. 5–6).

### A. Dr. Greer's Assistance to the Jury

Halaoui moves to exclude portions of Dr. Greer's report for a number of reasons. First, Halaoui contends that Dr. Greer's report and expert opinion about the cause of Halaoui's depression will not be helpful to the jury. (Doc. 54, pp. 5–10). Expert testimony is helpful to a jury when it "concerns matters that are beyond the understanding of the average lay person." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004), *cert. denied* 544 U.S. 1063 (2005). Conversely, expert testimony is not helpful "when it offers nothing more than what lawyers for the parties can argue in closing arguments," *id.* at 1262–63, or when the jury is able to deduce the proffered conclusions without any technical assistance from an expert, *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 565 (11th Cir. 1998), *cert. denied* 528 U.S. 812 (1999).

4

Halaoui believes that the jury is perfectly capable of reaching Dr. Greer's conclusions on its own based on the evidence presented by the parties at trial. Halaoui further asserts that Dr. Greer's report "read[s] like an attorney's closing arguments," consists of Dr. Greer's selective interpretation of facts in this case, and contains inadmissible legal conclusions. (Doc. 54, pp. 6–7).

Dr. Greer is certainly capable of assisting the jury in this case. Dr. Greer is a board-certified forensic psychiatrist with decades of psychiatric and psychological experience. (Doc. 57-3). Dr. Greer examined Halaoui and performed psychological evaluations, including the MMPI-2. (Doc. 54-1, p. 5). Dr. Greer intends to explain the results of his psychological evaluations, opine on whether Halaoui suffers from any psychological condition, and, if so, discuss the likely source of Halaoui's condition. These topics are clearly beyond the reach of the average lay person who will not have Dr. Greer's technical psychological and psychiatric experience and knowledge. To the extent Halaoui believes Dr. Greer's opinions are biased or disagrees with the facts or data underlying his opinions, Halaoui will have the opportunity to explore those issues on cross-examination. *Rosenfield*, 654 F.3d at 1193. Dr. Greer's report and testimony will not be excluded for these reasons.

Upon reviewing Dr. Greer's report, the Court does find one portion that warrants exclusion. In the "Opinions and Reasoning" section of his report, Dr. Greer states, "First, there does not appear to be sufficient information to conclude Mr. Halaoui's sexual relationship with Ms. Bassett was the product of sexual harassment." (Doc. 54-1, p. 6). Although experts are not prohibited from offering opinions that involve an ultimate issue to be resolved by the jury, Fed. R. Evid. 704(a), expert testimony should be excluded

where the expert "testif[ies] to the legal implications of conduct," urges the jury to reach a particular legal conclusion, or implies that he is able to interpret the law. *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).

Dr. Greer's testimony about whether Halaoui's relationship with Bassett resulted from sexual harassment is improper. Dr. Greer clarified upon deposition that he did not intend to refer to "sexual harassment" in the legal sense, but rather that he was using a commonly understood term to describe what he perceived happened to Halaoui. (Doc. 57-2, 40:1–41:8). Nevertheless, the Court finds that this specific statement in Dr. Greer's report crosses the line into testifying about the legal implications of the conduct in dispute or urging a particular legal conclusion. *Montgomery*, 898 F.2d at 1541. The Court therefore strikes this sentence from Dr. Greer's report as it is currently written. However, Dr. Greer should be afforded the opportunity to revise his report to more properly convey his opinion without using the legally-charged term "sexual harassment." Although Dr. Greer may not testify as to what conduct constitutes or does not constitute sexual harassment, he may testify on the relationship, or lack thereof, between Bassett's sexual advances and Halaoui's psychological and emotional state, including whether the forensic evidence and testing supports a finding that such advances were unwanted. Dr. Greer may therefore submit a revised report at least five (5) days prior to the start of trial in this matter. Alternatively, should Dr. Greer not submit a revised report, Renaissance shall redact the stricken sentence from Dr. Greer's current report.

### B. Dr. Greer's Methodology

Next, Halaoui challenges the methodology employed by Dr. Greer. Halaoui disputes the conclusions Dr. Greer reaches, claiming that Dr. Greer's opinion on the

6

cause of Halaoui's depression is unsupported by the evidence, based on faulty logic, and is merely speculative in nature. (Doc. 54, pp. 10–11).

In determining the reliability of an expert's methodology, the U.S. Supreme Court advises courts to look at a number of factors, including (1) whether the methodology has been tested, (2) whether the methodology has been subjected to peer review and publication, (3) rates of error associated with the methodology, (4) the existence of standards governing the methodology, and (5) the methodology's degree of acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593–94. "Evidence that derives from principles and techniques of uncontroverted validity is, of course, readily admissible, subject to the qualification of the proposed witness and . . . a showing that proper safeguards were employed . . . ." *United States v. Downing*, 753 F.2d 1224, 1232 (3d Cir. 1985).

As recounted above, Dr. Greer conducted a general mental status examination and had Halaoui complete the MMPI-2. Halaoui raises no issue as to the reliability of these two psychological evaluations. Nor could he with any degree of sincerity, as Halaoui's proffered expert witness, Dr. Jeffrey A. Danziger, relies on the same two psychological evaluation techniques in forming his opinions. (Doc. 57-1, pp. 7–8). Moreover, the MMPI-2 is the most widely used and accepted standardized psychological metric for adults and has been subjected to decades of peer review and publication. General mental status examinations are similarly commonplace and widely accepted within the psychological and psychiatric communities. Further, upon reviewing the report in light of the relevant *Daubert* factors, the Court finds Dr. Greer's methodology reliable. Again, to the extent Halaoui disagrees with Dr. Greer's opinions, Halaoui may test Dr.

Greer's conclusions through cross-examination and presentation of contrary evidence. *Rosenfield*, 654 F.3d at 1193.

### C. Dr. Greer's Reliance on Inadmissible Information

Finally, Halaoui asks the Court to determine the admissibility of certain portions of Dr. Greer's report. Specifically, Halaoui contends that Dr. Greer relied on irrelevant material and inadmissible hearsay in the "History of Events," "Social History," and "Collateral Information" sections of his report. (Doc. 54, pp. 12–15). It is well-understood that expert witnesses may rely on otherwise inadmissible facts or data in forming their opinions, including evidence that is irrelevant or which constitutes inadmissible hearsay. Fed. R. Evid. 703. This general rule is subject to two exceptions. First, the inadmissible facts or data on which the expert relies must be of the same type which other reasonable experts in the same field would rely on in forming their own opinions. *Id.*; *United States v. Floyd*, 281 F.3d 1346, 1349 (11th Cir. 2002) (per curiam). Second, although an expert may rely on inadmissible facts or data in forming his opinion, he may not disclose these inadmissible facts or data to the jury "if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

Halaoui takes issue with the above-referenced sections of Dr. Greer's report because they contain factual information derived from "Dr. Greer's individual investigation of [the] facts in this case." (Doc. 54, p. 12). Halaoui is particularly concerned with Dr. Greer's review of documentary evidence filed in this case and his conversation with Halaoui's ex-girlfriend in forming his opinion. (*Id.* at pp. 12–15). Halaoui argues that Dr. Greer cannot be used to relay the factual narrative of this case to the jury.

However, Halaoui's view on this point is mistaken. It is not that an expert witness cannot convey factual narratives to the jury, it is that an expert witness cannot be used *exclusively* for this purpose. *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468–69 (S.D.N.Y. 2005). Where an expert relies on certain facts or data in forming an opinion, the expert is certainly allowed to explain the basis of his opinion in light of these facts or data. *Id.* There is no indication from either party or Dr. Greer's report that Dr. Greer's sole purpose in testifying is to convey factual narrative. Moreover, Halaoui's position that he would be substantially prejudiced were Dr. Greer to disclose the facts in the referenced sections of his report is unconvincing, especially considering the fact that Halaoui's own expert witness relies on the same purportedly inadmissible information in his report. (Doc. 57-1, pp. 1–6). Therefore, although Halaoui will be allowed to object during trial should any disputed testimony or evidence be offered, Dr. Greer's opinion will not be excluded on this basis.

Halaoui also objects to Dr. Greer's interview with Halaoui's ex-girlfriend as violating Federal Rule of Evidence 412, which proscribes certain evidence offered to prove a victim's past sexual behavior or predisposition. On May 1, 2015, Halaoui filed a motion in limine on similar grounds, although the relief he requests is broader in scope. (Doc. 69). The Court defers ruling on this portion of Halaoui's motion to exclude and will address the matter together with his motion in limine when that motion becomes ripe for consideration.

## IV.    CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion to Exclude Portions of Expert Report and Testimony of Defendant's Expert

Richard A. Greer (Doc. 54) is **GRANTED IN PART**, **DENIED IN PART**, and **DEFERRED IN PART** as follows:

1. Plaintiff's motion is **GRANTED** to the extent that Dr. Greer may not testify or offer opinion on whether the conduct at issue in this case constitutes sexual harassment.  That portion of Dr. Greer's report identified herein as improper is **STRICKEN**.  Dr. Greer may submit a revised report that more properly conveys his opinion without using the stricken language **at least five (5) days** prior to the start of trial.

2. Plaintiff's motion is **DEFERRED** to the extent Plaintiff objects to Dr. Greer's report and testimony under Federal Rule of Evidence 412.

3. Plaintiff's motion is otherwise **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on May 13, 2015.

_____
PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record